1

2

3

4

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

5

6

7

8

9

10

| | |
|---|---|
| **WILLIAM E. PERRYMAN,** | **1:16-cv-00643-LJO-SKO** |
| **Plaintiff,** | **MEMORANDUM DECISION AND ORDER DENYING PLAINTIFF'S MOTION TO REMAND; GRANTING IN PART JPMORGAN CHASE BANK'S MOTION TO DISMISS; REMANDING CASE TO KINGS COUNTY SUPERIOR COURT** |
| **v.** | |
| **JPMORGAN CHASE BANK, N.A.; QUALITY LOAN SERVICE CORPORATION; and DOES 1 through 50, inclusive,** | |
| **Defendants.** | **(Docs.  8, 10)** |

11

12

## I.   INTRODUCTION

13        Pending before the Court is Plaintiff's motion to remand this case to Kings County Superior

14  Court where it was originally filed on April 6, 2016, and subsequently removed to federal court by

15  Defendant Chase Bank, N.A. ("Chase") on May 9, 2016.  Plaintiff seeks remand under Federal Rule

16  12(b)(1), asserting the Court lacks subject matter jurisdiction because Chase failed to establish the

17  amount placed in controversy by the complaint exceeds $75,000, the minimum for diversity jurisdiction

18  under 28 U.S.C. § 1332(a).  Also pending before the Court is Chase's motion to dismiss Plaintiff's

19  complaint.  The Court determined these motions were appropriate for decision without oral argument

20  pursuant to Local Rule 230(g), and the hearings set for July 28, 2016, and August 11, 2016, were

21  vacated.  (Docs. 12, 15.)  For the following reasons, Plaintiff's Motion to Remand is DENIED, Chase's

22  motion to dismiss is GRANTED in part, and the case is remanded to Kings County Superior Court.

23                ## II.   FACTUAL AND PROCEDURAL BACKGROUND

24        In June 2007, Plaintiff obtained a mortgage from Chase in the amount of $255,000 on a

25  residence in Lemoore, California (the "property"), and executed a Promissory Note as well as a Deed of

Trust in favor of Chase.  (Cmplt., ¶¶ 1, 11.)  In 2015, Plaintiff began experiencing financial difficulties and contacted Chase for assistance.  (Cmplt., ¶ 13.)  Chase advised Plaintiff he would qualify for a loan modification, encouraged Plaintiff to apply, but informed Plaintiff that he must fall – and remain – two months behind on his mortgage payments prior to applying for a modification.  (*Id.*)  Chase advised Plaintiff there was no other option for assistance besides defaulting on his mortgage payment obligation, but "promised Plaintiff that no foreclosure actions would initiate against Plaintiff while he was under review for modification."  (*Id.*)

Plaintiff withheld mortgage payments from Chase for two subsequent months, gathered and compiled the paperwork necessary to complete a loan modification application, submitted his full application to Chase via certified mail, and received confirmation that his packet had been delivered.  (Cmplt., ¶¶ 14, 16.)  Subsequently, Chase lost his application, Plaintiff resent all the loan modification documents, and Chase informed him the loan modification application was under active review.  (Cmplt., ¶ 17.)

Despite informing him that his application was considered complete and it was "in process," after several months, Chase informed Plaintiff that his application was considered incomplete due to "missing" documents that had not previously been required.  (Cmplt., ¶¶ 19, 20.)  Plaintiff submitted the newly requested documents.  (Cmplt., ¶ 22.)  Plaintiffs' voicemails to Chase during the pendency of his loan application consistently went unanswered, and months passed with no answer regarding his pending application.  Finally, while Plaintiff's loan modification application was pending, Chase caused a Notice of Default to be recorded against the property on December 1, 2015, and a Notice of Trustee's Sale was recorded on March 7, 2016.

On April 9, 2016, Plaintiff filed suit against Chase in Kings County Superior Court alleging violations of the California Homeowners Bill of Rights; unfair competition under California Business and Professions Code § 17200, *et seq.*, breach of the covenant of good faith and fair dealing, negligence, negligent infliction of emotional distress, and breach of the Equal Credit Opportunity Act.

The relief sought included a declaration that Chase failed to abide by its own guidelines in offering Plaintiff an application for a loan modification in violation of California Civil Code § 2923; violated communication requirements under the California Homeowners Bill of Rights; and failed to provide the required statutory notifications under the California Civil Code. Finally, the complaint sought to enjoin Chase from violating the HOBR and to temporarily enjoin the trustee's sale under California Civil Code § 2924.12 until such time as the court determined that Chase had corrected and remedied all statutory violations.

On May 9, 2016, Chase removed the action based on diversity jurisdiction asserting the amount in controversy exceeded $75,000 as Plaintiff sought to enjoin the pending foreclosure sale of his property currently valued at $165,500. Chase filed a motion to dismiss the complaint on June 15, 2016, arguing Plaintiff had failed to plead a claim upon which relief could be granted. (Doc. 8.) On July 14, 2016, Plaintiff filed a motion to remand for lack of subject matter jurisdiction contending the amount in controversy could not be predicated on the value of his property as he was seeking only a temporary injunction on the trustee's sale while a loan modification request was pending. The motion to dismiss was taken under submission on July 22, 2016, while Plaintiff's motion for remand on subject matter jurisdiction grounds was pending. Currently pending before the Court is Chase's motion to dismiss and Plaintiff's motion to remand.

### III.   LEGAL STANDARDS

**A.   Removal Jurisdiction**

In considering a notice of removal, "it is to be presumed that a cause lies outside the limited jurisdiction of the federal courts and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009) (quoting *Abrego Abrego v. Dow Chem. Co*., 443 F.3d 676, 684 (9th Cir. 2006) (quotation marks omitted)). Courts "strictly construe the removal statute against removal jurisdiction," and "the defendant always has the burden of establishing that removal is proper." *Gaus v. Miles, Inc*., 980 F.2d 564, 566 (9th

3

1    Cir.1992).  Any doubts about jurisdiction must be resolved in favor of remand.  *Id.*

2           Pursuant to 28 U.S.C. § 1441(a), a defendant may remove to federal court a claim filed in state

3    court that could have initially been brought in federal court.  28 U.S.C. § 1441(a); *Caterpillar Inc. v.*

4    *Williams*, 482 U.S. 386, 392 (1987).  A district court must remand a case to state court "if at any time

5    before the final judgment it appears that the district court lacks subject matter jurisdiction."  28 U.S.C.

6    § 1447(c).  To exercise diversity jurisdiction, a federal court must find complete diversity of citizenship

7    among the adverse parties, and the amount in controversy must exceed $75,000.  28 U.S.C. § 1332(a).

8    "[W]here it is unclear or ambiguous from the face of a state-court complaint whether the requisite

9    amount in controversy is pled," the removing defendant bears the burden of proving by a

10   preponderance of the evidence that the amount in controversy exceeds the jurisdictional amount.

11   *Guglielmino v. McKee Foods Corp*., 506 F.3d 696, 699 (9th Cir. 2007). "Under this burden, the

12   defendant must provide evidence establishing that it is 'more likely than not' that the amount in

13   controversy exceeds that amount."  *Sanchez v. Monumental Life Ins. Co*., 102 F.3d 398, 404 (9th Cir.

14   1996).

15   **B.    Motion to Dismiss – Rule 12(b)(6)**

16          A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is a challenge to the

17   sufficiency of the allegations set forth in the complaint.  A Rule 12(b)(6) dismissal is proper where

18   there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a

19   cognizable legal theory."  *Balisteri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). In

20   considering a motion to dismiss for failure to state a claim, the court generally accepts as true the

21   allegations in the complaint, construes the pleading in the light most favorable to the party opposing the

22   motion, and resolves all doubts in the pleader's favor.  *Lazy Y. Ranch LTD v. Behrens*, 546 F.3d 580,

23   588 (9th Cir. 2008).

24          To survive a 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim

25   to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim

4

has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a Plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions." *Twombly*, 550 U.S. at 555 (internal citations omitted). Thus, "bare assertions . . . amount[ing] to nothing more than a 'formulaic recitation of the elements' . . . are not entitled to be assumed true." *Iqbal*, 556 U.S. at 681. "[T]o be entitled to the presumption of truth, allegations in a complaint . . . must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). In practice, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562. To the extent that the pleadings can be cured by the allegation of additional facts, a plaintiff should be afforded leave to amend. *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv*., *Inc*., 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

## IV. ANALYSIS

A.      **Plaintiff's Motion to Remand is Denied**

Chase removed this action based on diversity jurisdiction under 28 U.S.C. § 1332(a). In his motion to remand, Plaintiff contends Chase failed to establish the requisite amount in controversy, and the Court lacks subject matter jurisdiction.

   1.      **Chase Fails to Establish Diversity Jurisdiction Under 28 U.S.C. § 1332(a)**

      a.      **Complete Diversity of the Parties Exists**

There is no dispute the parties are diverse for purposes of jurisdiction under 28 U.S.C. § 1332(a). Plaintiff Perryman is a California resident; Chase is an association organized under the laws

of the United States with its main office in Columbus, Ohio.  (Doc. 1, ¶ 11.)  Although Defendant Quality Loan Service Corporation ("QLS") is a California corporation with its principal place of business in San Diego, QLS is a trustee on the deed of trust on Plaintiff's home, against whom no substantive allegations are made.  Nominal parties with nothing at stake in the litigation are disregarded in determining diversity, even if their technical joinder is proper.  *Strotek Corp. v. Air Transport Ass'n of Am.*, 300 F.3d 1129, 1133 (9th Cir. 2002); *see also Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 461 (1980) ("[A] federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy.").  Because there are no substantive allegations against QLS, it is a nominal party whose location is irrelevant for purposes of determining diversity jurisdiction.  Accordingly, there is complete diversity among the parties pursuant to Section 1332(a).

### b.  Chase Has Not Established the Amount in Controversy Exceeds $75,000

Plaintiff's complaint does not specify the amount in controversy; therefore, Chase is required to prove by a preponderance of the evidence that the amount in controversy requirement has been met.  *See Guglielmino*, 506 F.3d at 699; *Sanchez*, 102 F.3d at 404.  Chase's notice of removal indicates the $75,000 amount-in-controversy threshold is satisfied because Plaintiff's complaint seeks to enjoin foreclosure on his home, which is valued at $165,500.  (Doc. 1, ¶ 8.)

Plaintiff asserts his lawsuit involves a *temporary* injunction pending Chase's compliance with the law, and under this circumstance, district courts in this circuit have concluded the amount in controversy cannot be established by the entire loan or the value of the property.  Chase's reliance on the value of his property to establish the amount in controversy is therefore insufficient to establish diversity jurisdiction.

Under the Ninth Circuit's decision in *Chapman v. Deutsche Bank Nat'l Trust Co.*, 651 F.3d 1039, 1045 (9th Cir. 2011), Chase argues that where a plaintiff seeks to enjoin foreclosure, the amount in controversy is measured by the value of the real property at issue.  Because Plaintiff seeks to enjoin Chase from foreclosing on Plaintiff's house while his loan modification application is pending, Chase

1  maintains the complaint has placed the total value of the property into controversy.

2          When the heart or primary purpose of a lawsuit is a request for injunctive or other equitable

3  relief, the amount in controversy is measured by the value of the object of the litigation.  *Cohn v.*

4  *Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002) (per curiam); *Chapman v. Deutsche Bank Nat'l Trust*

5  *Co.*, 651 F.3d 1039, 1045 (9th Cir. 2011); *Garfinkle v. Wells Fargo Bank*, 483 F.2d 1074, 1076 (9th

6  Cir. 1973).  The parties' arguments highlight the split among district courts on the application of the

7  amount-in-controversy rule articulated in *Cohn*, *Chapman*, and *Garfinkle* as applied to cases where

8  temporary injunctive relief is sought while a mortgage loan modification request is pending.  As it

9  pertains to the trustee's sale, the injunctive relief sought here was created under California's

10 Homeowners Bill of Rights ("HOBR"), which became effective on January 1, 2013.  2012 Cal. Stats.

11 Ch. 86, Assembly Bill 278, §20.  The purpose of the HOBR is to ensure that borrowers are "considered

12 for, and have a meaningful opportunity to obtain, available loss mitigation options" in order to avoid

13 foreclosure.  Cal. Civ. Code § 2923.4.  Among other protections, the HOBR "attempts to eliminate the

14 practice, commonly known as dual tracking, whereby financial institutions continue to pursue

15 foreclosure even while evaluating a borrower's loan modification application."  *Rockridge Trust v.*

16 *Wells Fargo, N.A.*, 985 F. Supp. 2d 1110, 1149 (N.D. Cal. 2013).  To meet the policy objectives of the

17 HOBR in light of the threat of dual tracking, it was necessary for the legislature to create a pocket of

18 time to address alleged material violations of the HOBR *before* the underlying property was sold by the

19 lender at a trustee's sale.  Therefore, where a borrower files suit to enjoin material violations of

20 particular sections of the HOBR *prior* to recordation of a trustee's deed upon sale, any trustee's sale is

21 temporarily enjoined until such time as a court determines the material violations have been remedied

22 or corrected.  Cal. Civ. Code § 2924.12(a)(1)-(2).  For purposes of federal jurisdiction, the question is

23 how temporarily enjoining a trustee's sale under the HOBR applies to determining the amount in

24 controversy.

25

1    A number of courts have concluded that enjoining foreclosure temporarily to afford time to

2    remedy alleged statutory violations related to a pending loan modification request does not place the

3    entire value of the underlying loan or property into controversy because the property is not the primary

4    object of the litigation – the loan modification process is the primary focus.  *Uribe v. Wells Fargo*, 15-

5    cv-9053, 2016 WL 409666, at *1 (C.D. Cal. Feb. 2, 2016) (entire loan amount cannot be used to show

6    amount in controversy where plaintiff seeks injunctive relief to enjoin a foreclosure sale pending a loan

7    modification); *Vergara v. Wells Fargo Bank, N.A.*, 15-cv-00058-LJS, 2015 WL 1240421 (C.D. Cal.

8    Mar. 17, 2015) (finding request for loan modification and injunction enjoining bank from future

9    foreclosure did not place the value of the entire loan at issue); *Soto v. Litton Loan Servicing*, 10-cv-

10   05099, 2011 WL 724746, at *4 (N.D. Cal. Feb. 22, 2011) (plaintiffs' suit for loan modification did not

11   place value of house at issue in the litigation to meet the amount in controversy threshold); *Cheng v.*

12   *Well Fargo Bank, N.A.*, 10-cv-1764-JLS (FFMx), 2010 WL 4923045, at *2 (C.D. Cal. Dec. 2, 2010)

13   (the amount of the loan at issue is not a relevant measure of damage in loan modification case); *Landa*

14   *v. Flagstar Bank*, No. 10-cv-1429-L (BGS), 2010 WL 2772629, at *2 (S.D. Cal. July 13, 2010) (where

15   rescission of the underlying loan not sought, temporary injunction against foreclosure did not implicate

16   value of property or amount of the underlying mortgage for amount in controversy).[1]

17   Other district courts have concluded that any injunction on foreclosure, however temporary,

18   places the injunctive relief at the heart of the litigation thus implicating the value of the property or the

19   amount of the underlying mortgage to establish the amount in controversy.  *Thomas v. Wells Fargo*

20   *Bank, N.A*, 3:15-cv-02344-GPC-JMA, 2016 WL 184405, at *4 (S.D. Cal. Jan. 14, 2016) (complaint

21   seeking to enjoin foreclosure due to pendency of loan modification application placed value of property

22

---

23   [1] Other courts have drawn a narrower distinction, finding that where the foreclosure process has not yet been initiated by the
24   lender, a party seeking injunctive relief against potential foreclosure does not implicate the property value or the loan amount
     for purposes of the amount in controversy.  *Lopez v. JPMorgan Chase Bank*, *N.A.*, No. 15-cv-2030-JVS (JCGx), 2016 WL
     320105, at * 2-3 (C.D. Cal. Jan. 25, 2016); *Quiroga v. Bank of America, N.A.*, No. 15-cv-1163-MFW (KKx), 2015 WL
25   4747978 *3 (C.D. Cal. Aug. 10, 2015); *Vonderscher v. Green Tree Servicing, LLC*, No. 2:13-cv-00490-MCE-EFB, 2013 WL
     1858431, at *3-4 (E.D. Cal. May 2, 2013).

or amount of mortgage into controversy); *Campos v. Wells Fargo Bank*, No. 15-cv-1200 JVS (DTBx), 2015 WL 5145520, at * 3 n.1 (C.D. Cal. Aug. 31, 2015) (concluding that suit relating to loan modification with no foreclosure activity alleged in the complaint implicated the entire value of the underlying loan was at issue for purposes of jurisdiction); *Hendricks v. Wells Fargo Bank, N.A.*, No. 15:cv-01299-MFW (JEMx), 2015 WL 1644028 at *5 (C.D. Cal. Apr. 14, 2015) (request for injunctive relief due to pending loan modification application indicates at least one object of the litigation is the property and thus its value may be used to determine the amount in controversy); *Hernandez v. Specialized*, No. 14-cv-9404-GW (JEMx), 2015 WL 350223, at * (C.D. Cal. Jan. 22, 2015); *Major v. Wells Fargo Bank, N.A.*, No. 14-cv-998 2014 WL 4103936, at * 1 (S.D. Cal. Aug. 18, 2014) (value of property or value of the loan may establish the amount in controversy in action arising out of foreclosure); *Reyes v. Wells Fargo Bank, N.A.*, No. 10-cv-01667-JCS, 2010 WL 2629785 (N.D. Cal. June 29, 2010) (concluding request to enjoin foreclosure sale made property the object of the litigation and full amount of property or the loan amount could be used to satisfy amount in controversy requirement).

The Court is not persuaded that the temporary injunction of the trustee's sale to which Plaintiff is entitled under Section 2924.12(a)(2) is the heart or primary purpose of this litigation as was the declaratory relief sought in *Chapman*, which also dealt with foreclosure.  In *Chapman*, 651 F.3d at 1041-42, the plaintiffs filed a state court quiet title action against their lender who had foreclosed on the plaintiffs' home after they had fallen behind on their mortgage payments.  Asserting they were never given statutory notice of the default or the trustee's sale, the plaintiffs sought a declaration voiding the trustee's sale, a quiet title judgment determining they owned the property in fee simple, and damages. *Id.* at 1042.  In holding the district court properly exercised diversity jurisdiction under Section 1332(a)(1), the Ninth Circuit cited *Cohn* and determined the declaratory relief seeking to unwind the trustee's sale of the property and vest title to the plaintiffs in fee simple was the heart of the suit.  The object of the declaratory relief in *Chapman* was the plaintiffs' home, which had an assessed value of

1    more than $200,000, meeting the jurisdictional minimum.

2            The facts of this case and the nature of the equitable relief requested are very different from

3    *Chapman*.  Plaintiff is not seeking to enjoin foreclosure permanently nor is he seeking to quiet title;

4    rather, he seeks to enjoin Chase's alleged violations of the HOBR in considering his loan modification

5    application.  Unlike *Chapman,* none of Plaintiff's claims entitles him to permanently enjoin the trustee's

6    sale or implicate the actual validity of the foreclosure, as Plaintiff concedes he is in default on the

7    underlying mortgage.  Chase asserts Plaintiff is nonetheless seeking a "permanent injunction" because

8    the words "permanent injunction" appear in the complaint's prayer for relief.   This is a

9    mischaracterization of the complaint.  Plaintiff seeks to "permanently" enjoin Chase from engaging in

10   unlawful and deceptive acts and practices under the HOBR and California law by failing to give him a

11   decision on his loan modification application.  This cannot be read to mean Plaintiff seeks to enjoin the

12   trustee's sale permanently, particularly because the injunction available under Section 2924.12(a)(2) is

13   temporary and survives only until any violation of the HOBR is corrected or remedied.  Distinct from

14   *Chapman*, there is no factual basis in Plaintiff's complaint, nor are any claims pled, to support a

15   permanent injunction against foreclosure of the property.

16           The object of this litigation, and indeed the purpose of the HOBR, is to require Chase to

17   consider Plaintiff's loan modification application and provide Plaintiff with a decision prior to

18   foreclosure.  The Section 2924.12 temporary injunction is the procedural vehicle enabling Plaintiff to

19   pursue a decision from Chase on his loan modification application.  In *Chapman*, title to the property

20   was the primary remedy the plaintiffs sought, thus the declaration regarding ownership of the house

21   was the primary object of the case.  The temporary injunctive relief pertaining to the trustee's sale here

22   is not the heart of this case.  Because Plaintiff alleges he is in default on the underlying loan and does

23   not challenge the actual validity of foreclosure, a temporary stall of the trustee's sale achieves very little

24   on its own and is not itself a correction or remedy for Chase's alleged violations of the HOBR.

25   Moreover, none of Plaintiff's claims, even if meritorious, require Chase to offer Plaintiff a modified

1    loan or permanently stop the foreclosure.  It is Chase's consideration of an alternative loan that Plaintiff

2    seeks, not title to the property or permanent injunction on the foreclosure.  Under these circumstances,

3    the temporary injunction on the trustee's sale under Section 2924.12 is distinguishable from the

4    declaratory relief sought in *Chapman* and is not the primary object of the litigation.  *See also Garfinkle*,

5    483 F.2d at 1076 (plaintiff sought to *permanently* enjoin bank from foreclosure sale on grounds that

6    California's nonjudicial foreclosure statute was unconstitutional, thus property was the object of the

7    litigation and its value could be used to establish amount in controversy).

8         This Court finds persuasive those district courts which have concluded that temporarily

9    enjoining a trustee's sale while a loan modification is pending does not implicate the value of the

10   property for purposes of establishing the amount in controversy.  *See Uribe*, *Vergara, Soto, Cheng*, and

11   *Landa, supra.*  Chase has therefore not established by a preponderance of the evidence that the

12   jurisdictional minimum of $75,000 has been placed into controversy by the complaint.  As such,

13   removal jurisdiction is not supported under 28 U.S.C. § 1332(a).

14   **B.    Removal Jurisdiction Exists under 28 U.S.C. § 1331**

15        Alternatively, Chase contends removal jurisdiction exists under 28 U.S.C. § 1331 because the

16   complaint sets forth a claim under federal law – i.e., the Equal Credit Opportunity Act ("ECOA"), 15

17   U.S.C. §§ 1691 -1691f.  Although federal question jurisdiction was not identified in Chase's removal

18   papers as a basis for subject matter jurisdiction, the propriety of removal is determined solely on the

19   basis of the pleadings filed in state court and once it has been removed, the court has jurisdiction over it

20   on all grounds apparent from the complaint, not just those cited in the removal notice.  (Doc. 13, 5:11-

21   20 (citing *Williams v. Costco Wholesale Corp.*, 471 F.3d 975, 976 (9th Cir. 2006)).)  Here, the ECOA

22   claim was evident on the face of the complaint even though it was not raised by Chase as a basis for

23   removal jurisdiction.  Removal jurisdiction is proper based on the existence of a federal question

24   pursuant to Section 1331.  *See Brockman v. Merabank*, 40 F.3d 1013, 1016 (9th Cir. 1994).

25        As the Court has subject matter jurisdiction based on 28 U.S.C. §1331, Plaintiff's motion to

1    remand is DENIED.  The Court next considers Chase's motion to dismiss the complaint pursuant to

2    Federal Rule 12(b)(6).

3    **B.       Chase's Motion to Dismiss is Granted in Part and the Case is Remanded**

4           **1.       Plaintiff's ECOA Claims is DISMISSED with Prejudice**

5           Plaintiff's Sixth Cause of Action sets forth a claim for breach of the ECOA.  Plaintiff alleges he

6    returned a completed application for a loan modification to Chase during the summer of 2015, but

7    Chase never gave Plaintiff any official notification indicating it had been approved or denied.  Plaintiff

8    alleges Chase violated the ECOA by failing to respond to his application within 30 days after its

9    submission.  (Cmplt., ¶¶ 90-95.)

10          The ECOA "makes it illegal 'for any creditor to discriminate against any applicant, with respect

11   to any aspect of a credit transaction . . . on the basis of race, color, religion, national origin, sex or

12   marital status, or age.'"  *Schlegel v. Wells Fargo Bank, N.A.*, 720 F.3d 1204, 1210 (9th Cir. 2013)

13   (quoting 15 U.S.C. § 1691(a)(1)).  "One way that the ECOA effectuates this goal is through its notice

14   requirement, which states[,] '[e]ach applicant against whom adverse action is taken shall be entitled to a

15   statement of reasons for such action from the creditor.'"  *Id.* (quoting 15 U.S.C. § 1691(a)(1)).  This

16   notice of adverse action is to be provided to an applicant within 30 days after receipt of a completed

17   application for credit.  15 U.S.C. § 1691(d)(1).  When a creditor takes an adverse action against an

18   applicant without giving the required notice, the applicant may sue for violation of the ECOA.  *Id.* §

19   1691e ("Any creditor who fails to comply with any requirement imposed under this subchapter shall be

20   liable to the aggrieved applicant for any actual damages sustained by such applicant").

21          Circuit courts and district courts within this circuit have explicitly recognized that the ECOA's

22   notice requirements are distinct from its prohibition against discrimination in lending.  *See Davis v.*

23   *U.S. Bancorp*, 383 F.3d 761, 766 (8th Cir. 2004) ("in addition to a generalized prohibition of

24   discrimination, [ECOA] also establishes procedural requirements for extending credit and

25   communicating with applicants"); *see also Watts v. JP Morgan Chase Bank, N.A.*, No. 5:11-cv-02780-

12

1   LHK, 2012 WL 3638537, at * 8 (N.D. Cal. Aug. 22, 2012) ("The ECOA prohibits discrimination

2   against an applicant for credit . . ." and, "in addition, the ECOA establishes procedural requirements

3   that creditors must follow in notifying any applicant when action is taken on the credit application").

4   Courts have articulated a multi-element test to determine whether a plaintiff has properly pled a claim

5   of discrimination under the ECOA.  *Hafiz v. Greenpoint Mortgage Funding, Inc.*, 652 F. Supp. 2d

6   1039, 1045 (N.D. Cal. 2009).  "To satisfy this test, plaintiff must allege that: (1) she is a member of a

7   protected class; (2) she applied for credit with defendants; (3) she qualified for credit; and (4) she was

8   denied credit despite being qualified."  *Id.*  (citing *Chiang v. Veneman*, 385 F.3d 256, 259 (3d Cir.

9   2004)).  However, these pleading requirements are applicable to an ECOA claim only to the extent that

10   there is an allegation of discrimination.  The ECOA's procedural requirements apply regardless of

11   whether the *Hafiz* elements have been satisfactorily pled.

12          Chase argues Plaintiff's claim must be dismissed because he fails to allege he is a member of a

13   protected class, but this conflates a discrimination claim and a procedural claim under the ECOA.

14   Where, as here, the complaint sets out allegations pertaining only to a procedural claim under the

15   ECOA, the failure to plead the elements of a separate and distinct ECOA discrimination claim is

16   irrelevant.

17          Chase also asserts Plaintiff's claim is defective because he was in default on his original loan at

18   the time of his loan modification application.  The Court agrees.  The ECOA's notice requirements do

19   not apply to a creditor's "refusal to extend additional credit under an existing credit arrangement where

20   the applicant is delinquent or otherwise in default."  15 U.S.C. §1691(d)(6). The implementing

21   regulations clarify that notification under the statute is required only for approval, counteroffer, or

22   "adverse action" on the application.  12 C.F.R. § 202.9(a)(1)(i).  An adverse action "does not include . .

23   . [a]ny action or forbearance relating to an account taken in connection with inactivity, default, or

24   delinquency as to that account."  12 C.F.R. § 202.2(c)(2)(ii).  Hence, where an applicant is already in

25   default, no notice is required as to a modification request pertaining to that loan.  *See Smith v. Wells*

1   *Fargo Bank, N.A.*, No. 15-cv-01779-YGR, 2016 WL 283521, at * 6-7 (N.D. Cal. Jan. 25, 2016);

2   *Kaswell v. Wells Fargo Bank, N.A.*, No. CIV.A. RDB-13-2315, 2014 WL 3889183, at *4 (D. Md. Aug.

3   6, 2014) (notice requirements did not apply because mortgage was in default); G*uthrie v. Bank of Am.,

4   Nat. Ass'n*, No. CIV. 12-2472 ADM/LIB, 2012 WL 6552763, at *6 (D. Minn. Dec. 14, 2012)

5   ("Plaintiffs do not dispute that they had defaulted on their mortgage by the time of their loan

6   modification request. As a result, Bank of America's denial of this request did not amount to an 'adverse

7   action,' and it did not trigger ECOA notice requirements."); *Pandit v. Saxon Mortg. Servs., Inc*., No.

8   11–3935, 2012 WL 4174888, at *7 (E.D.N.Y. Sept. 17, 2012) (notice requirement did not apply

9   because plaintiffs were in default), *but see Green v. Cent. Mortgage Co*., No. 3:14-CV-04281-LB, 2015

10  WL 7734213, at *17 (N.D. Cal. Dec. 1, 2015) (following statutory interpretation in *MacDonald v.*

11  *Wells Fargo Bank N.A.*, No. 14-cv-04970-HSG, 2015 WL 1886000, at *3 (N.D. Cal. Apr. 24, 2015) to

12  deny motion to dismiss ECOA notice claim).

13         Here, Plaintiff concedes he was in default at the time he submitted his loan modification

14  application.  In light of his default, any decision or denial of his loan modification application is not

15  considered an adverse action and thus the notice provisions of the ECOA are not triggered.  Because of

16  Plaintiff's affirmative allegation of default, this claim cannot be cured by amendment, and it is

17  dismissed with prejudice.

18         **2.      The Court Declines to Exercise Supplemental Jurisdiction Over Plaintiff's
                     Remaining State Law Claims**

19

20         Plaintiff's ECOA claim is the only federal claim and the sole basis for subject matter

21  jurisdiction.  Upon its dismissal, the Court considers whether to exerciser supplemental jurisdiction

22  over Plaintiff's remaining state law claims.  Pursuant to 28 U.S.C. § 1367, a district court may decline

23  to exercise supplemental jurisdiction over state law claims if (1) they raise novel or complex issues of

24  state law, (2) the state claims substantially predominate over the federal claims, (3) the district court has

25  dismissed all of the federal claims, or (4) in exceptional circumstances, other compelling reasons justify

declining jurisdiction.  While the presence of any one of these four factors may be sufficient grounds to decline supplemental jurisdiction, in this case, several of these factors weigh against the exercise supplemental jurisdiction.

First, Plaintiff's ECOA claim provided the only basis for federal jurisdiction over the state law claims set forth in the complaint.  Now that the ECOA claim is dismissed, it is appropriate to decline jurisdiction over the remaining state law claims.  Second, the state law claims raise important issues of state law that are more appropriately resolved by the state courts.  Third, this case is in its earliest stages:  an answer has not yet been filed nor has discovery commenced.  *Carnegie–Mellon University v. Cohill*, 484 U.S. 343 (1988) (weighing the principles of economy, convenience, fairness, and comity on a motion to remand, the federal court should decline to exercise supplemental jurisdiction when "federal-law claims have dropped out of the lawsuit in its early stages").  Finally, the fact that this case was removed significantly alleviates any prejudice to Plaintiff since the state claims can be remanded, rather than dismissed, and Plaintiff will return to the original forum of his choice.

For all these reasons, the Court declines to exercise supplemental jurisdiction over the remaining state law claims.  Thus, the Court does not reach Chase's arguments regarding dismissal of the remaining state law claims.  *Grauberger v. St. Francis Hosp.*, 169 F. Supp. 2d 1172, 1179 (N.D. Cal. 2001) (after removal from state court and upon consideration of a motion to dismiss, court dismissed RICO claim upon which subject matter jurisdiction rested, declined supplemental jurisdiction, and refused to reach arguments regarding viability of remaining state law claims).

## V.  <u>CONCLUSION AND ORDER</u>

For the reasons stated above, it is HEREBY ORDERED that:

1.      Plaintiff's Motion to Remand is DENIED;

2.      Chase's Motion to Dismiss is GRANTED as to Plaintiff's ECOA claim which is

        dismissed with prejudice, and the Motion to Dismiss is otherwise DENIED without

        prejudice;

3.     The Court declines supplemental jurisdiction over Plaintiff's state law claims;

4.     This case is REMANDED to Kings County Superior Court; and

5.     The Clerk of Court is DIRECTED to close this case.

IT IS SO ORDERED.

Dated:   **August 22, 2016**                    **/s/ Lawrence J. O'Neill**
                                                UNITED STATES CHIEF DISTRICT JUDGE

16